IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ACHIM JOSEF MARINO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | A-07-CA-055  LY |
| | § | |
| NATHANIEL QUARTERMAN, Director | § | |
| Texas Department of Criminal | § | |
| Justice, Institutional Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

Before the Court are Petitioner's Petition for a Writ of Habeas Corpus By a Person in State Custody (Clerk's Dkt. #1), Petitioner's Memorandum in Support (Clerk's Dkt. #2), Respondent's Answer With Brief in Support (Clerk's Dkt. #9) and Petitioner's Answer in Opposition to Respondent's Answer to Habeas Corpus Petition (Clerk's Dkt. #14).  For the reasons set forth below, Petitioner's application for writ of habeas corpus should be denied.

**I.  PROCEDURAL HISTORY**

Petitioner Achim Josef Marino ("Marino") was convicted by a jury of capital murder on October 10, 2002.  Punishment was assessed by the trial judge at life confinement.  Petitioner's conviction was affirmed on direct appeal. *Marino v. State*, No. 03-02-00707-CR, 2004 WL 1468822 (Tex. App.–Austin July 1, 2004, pet ref'd).  The Supreme Court denied certiorari. *Marino v. Texas*,

545 U.S. 1119, 125 S. Ct. 2913 (2005).  Marino sought state post-conviction relief in an application for writ of habeas corpus.  The Texas Court of Criminal Appeals denied habeas relief without written order on the findings of the trial court without hearing.  *Ex parte Marino*, No. 18,783-06 (Tex. Crim. App. Jan. 10, 2007).  Petitioner then filed this action in federal court.

## II.  ISSUES RAISED

Petitioner raises twelve issues in sixteen grounds for relief.  Specifically, Marino complains: (1) he was coerced into writing a letter confessing to the offense; (2) he was denied a speedy trial; (3) he was denied counsel during official questioning; (4) he was denied fair criminal proceedings due to a leftist conspiracy; (5) the trial judge should have been recused; (6) he received ineffective assistance of counsel at trial and on appeal because of a conflict of interest;  (7) he is actually innocent because he was insane at the time of the offense; (8) he was deprived of equal protection; (9) he was denied proper credit for his jail time; (10) his sentence was improperly stacked on his prior sentences; (11) Texas prison officials have conspired to keep prisons full for financial reasons; and (12) he was denied adequate access to a law library to prepare his post-conviction applications.

## III.  STANDARD OF REVIEW

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996.  *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT, Pub. L. 104-132, 110 Stat. 1214 (1996) ("AEDPA").  Under the AEDPA, a habeas petitioner may not obtain relief with respect to any claim that was adjudicated on the merits in a state court proceeding unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established

federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000).  An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  A state court decision is entitled to deference unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2001).  A presumption of correctness attaches to factual determinations made by a state court. 28 U.S.C. § 2254(e)(1).  A habeas petitioner must rebut this presumption by clear and convincing evidence. *Id.*; *Ladd v. Cockrell*, 311 F.3d 349, 352 (5th Cir. 2002).

## IV.  ANALYSIS

### A.  Coerced Confession

Petitioner first contends he was coerced into writing a letter confessing to the offense. According to him, various state actors knew he was mentally incompetent and made him a variety of plea offers, all to convince him to write his confession letter, which was then planted in the files of the governor of Texas.  Specifically, Marino alleges: (1) in January 1996 "he told the affectionate, convict hugging, grandmotherly new age cultist substance abuse counselor" Ann Kogar ("Kogar") that he committed the instant offense; (2) Kogar told him he was not culpable for his actions "and that he should immediately convert to the new age religion, because Jesus Christ and his followers had murdered hundreds of millions of people for adhering to the ancient superior lively religions, and that Christianity was to be eradicated from the earth by the new agers very soon" and instructed him to wait until she talked to her friend, former Texas governor Ann Richards; (3) upon

Kogar's instructions he wrote a detailed written confession which he gave to her, and in reply she "again badgered Marino about converting to new age, while pointing out that his admission would humiliate and embarrass the liberal progressives in charge at Austin, and that Marino could get either the death penalty, or maybe first parole & a nice healthy paycheck, and that further confessions [were] pointless in light of established new age philosophy, which excuses certain conduct where providence clearly was involved;" (4) Kogar subsequently ordered him to rewrite his confession "per [Travis County District Attorney] Ronnie Earle" and delivered this second confession to Earle; (5) Kogar coached Marino to "change his mind" but instead he wrote two more confessions and mailed them to the ACLU, an Austin newspaper, plus the Austin police and District Attorney, and when Kogar discovered these letters she became very cool toward him; (6) in 1999 Kogar again approached Marino and requested he write another confession letter dated 1998 to then Texas governor George Bush, and told him "horror stories" about what would be done by Republicans to the prison system under the "new world order"; (7) Kogar also told him he might not be needed at all, but if he was he would be sent to Travis County "to coordinate an appropriate response to thwart and discredit George Bush into losing election 2000;" (8) shortly thereafter he was brought to the Travis County jail and had meetings and "power lunches" with various persons; (9) various lawyers and prosecutors coached him to write a "sham murder confession letter" which then Travis County Sheriff Margo Frasier had planted in the files at the Texas Governor's mansion; (10) in return for his cooperation in writing the confession letter to George Bush, Earle and others agreed to allow him to plead guilty to a "non capital murder life sentence back dated to January 1996, to be served in federal prison Bastrop FCI per a protective order, with eventual transfer in 2008 to a German prison per a prisoner exchange, and $50,000 in cash upon release." (Hab. Pet. Memo. at 1-7).

For several reasons, Marino has failed to show he is entitled to habeas relief based on these allegations.  First, he has provided no evidentiary support for his allegations of coercion in

the form of affidavit testimony or otherwise.  His unsupported allegations alone are insufficient. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value").  Nor has Petitioner shown any evidence that he was mentally incompetent at the time he wrote the confession letters.  Two psychiatric evaluations conducted prior to his trial, which included reviews of videotapes of Marino taken in 2000, found him competent to stand trial.  (Clerk's Rec. at 48-49; 167-69).  Finally, it is clear from the record that the letters of confession Marino now contends were coerced were not the only evidence of guilt presented at his trial.  Indeed, he admitted committing the offense during his own direct testimony.  (Trial Tr. 4 at 230-32).  Accordingly, he has failed to show how the admission of the purportedly coerced letters of confession deprived him of a fair trial.  Petitioner has, therefore, not shown he is entitled to habeas relief on this ground.

**B.  Speedy Trial**

Marino next maintains he was denied a speedy trial following his 1996 confession.  He alleges the delay in prosecuting him resulted in his inability to call a crucial defense witness because the witness died in 1999.

The record reveals Marino was initially indicted for this offense on June 14, 2001.  (Clerk's Rec. at 77).  A bench warrant was issued seeking his return to Travis County and counsel was appointed to represent him on August 10, 2001.  (*Id*. at 81, 83).  The case was reindicted on September 23, 2002.  (*Id*. at 6).  Trial began on October 7, 2002.  (*Id*. at 179).

The Speedy Trial Clause does not purport to protect a defendant from all effects flowing from a delay before trial.  *United States v. Loud Hawk*, 474 U.S. 302, 311, 106 S. Ct. 648, 654 (1986).  For preindictment delay to violate the due process clause it must "not only cause the

accused substantial, actual prejudice, but the delay must also have been intentionally undertaken by the government for the purpose of gaining some tactical advantage over the accused in the contemplated prosecution or for some other impermissible, bad faith purpose." *United States v. Crouch*, 84 F.3d 1497, 1514 (5th Cir. 1996).[1]

According to Marino, the delay between his letters of confession and prosecution deprived him of the testimony of long time friend Mario A. Rodgers ("Rodgers"). Petitioner asserts Rodgers would have testified to his long standing mental issues, including seeing visions and hearing voices, plus an inability to tell the difference between right and wrong. (Hab. Pet. Memo. at 7-8).

Presumably, Marino believes the purported testimony would have supported his insanity defense. Assuming his allegations are sufficient to establish the requisite "substantial, actual prejudice," Petitioner must also show the delay was intentionally undertaken by the government for a tactical advantage or other bad faith purpose. Marino fails to even allege such improper motivation, let alone point to any evidence establishing the government's bad faith intent. *See United States v. Avants*, 367 F.3d 433, 442 (5th Cir. 2004) (rejecting defense argument that, "in the absence of a legitimate reason for the delay", court should infer decision not to prosecute was made in order to gain tactical advantage); *United States v. Jimenez*, 256 F.3d 330, 345 (5th Cir. 2001) (burden is on defendant to satisfy both parts of *Crouch* test). Accordingly, he has not shown he is entitled to habeas relief on this basis.

## C. Denial of Counsel

Petitioner next asserts he was denied counsel during official questioning. As he points out, counsel was not appointed to represent him in this matter until August 2001. Marino contends, however, the investigation against him had begun some sixty eight months prior via questioning,

---

[1] Although it is not precisely clear, it appears Marino is complaining of the delay between his letters of confession and his indictment. Accordingly, although Respondent addresses the question of whether any postindictment delay violated Petitioner's due process rights, the undersigned finds it unnecessary to conduct such an analysis.

interviews and his letters of confession.  He claims the denial of counsel caused him "severe harm/prejudice."  (Hab. Pet. Memo. at 8).

Once a suspect in custody invokes his Fifth Amendment right to counsel, the police may not interrogate the suspect in the absence of counsel, even if the suspect later attempts to waive that right.  *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S. Ct. 1880, 1883 (1981).  The Sixth Amendment right to counsel similarly protects criminal defendants whose right to counsel has attached as to the offense in question at the time of the interrogation and who asserted the right to counsel before the interrogation began.  *See Patterson v. Illinois*, 487 U.S. 285, 290-91, 108 S. Ct. 2389, 2394 (1988) (rejecting an argument that police interrogation concerning a charged offense is prohibited once Sixth Amendment right to counsel attaches where the defendant has not invoked the right).

As discussed above, there is no evidence to indicate Petitioner was coerced by any police questioning or otherwise to execute the letters of confession beginning in 1996.  Rather, it is clear from Marino's own allegations that he executed those letters without any police prompting.  Further, the record shows, prior to official police questioning in August 2000, he was informed of his right to remain silent and his right to counsel during the questioning and voluntarily waived those rights.  (Trial Tr. 6 Ex. 77).  Petitioner has failed to show he was denied counsel at a time when his right to counsel had attached and been asserted by him.  Accordingly, he has not shown he is entitled to habeas relief on this basis.

**D.  Denial of Fair Proceedings**

In two related claims for relief Petitioner next asserts he was denied fair criminal proceedings due to a leftist conspiracy.  He alleges:

> the primary motive of the state actors criminal enterprise was to effect the outcome of Election 2000 in the favor of Al Gore while discrediting George W. Bush by making it appear, that he had ignored a murder confession letter which also proclaimed the actual innocence of the two men convicted of that crime, after which

7

the state actors planned to divorce & distance themselves from Marino by use of his obvious mental illness.  However, Marino was a life-long progressive liberal who is imminently qualified to comment on the basic ideology of a liberal progressive, which includes hatred of Christianity, as corroborated by Air America Network, which spews anti-Christian sentiment day & night, while promoting & tolerating other religions such as Muslims, in contradiction of their avowed atheism.  Republican Tom Delay was successful in recusing Judge Bob Perkins after proving that he donated $5,000 to moveon.org, which was founded by billionaire convicted felon George Soros, who was also accused of declaring war on the Holy Bible and Christian-Judeo values by the Jewish publication, "Messianic Perspectives-May/June 2006 issue-page 14."  Marino met individually or collectively with the state actors many times between January 1996 and October 2002, and Marino was reprimanded as worse than an infidel for converting from progressive liberalism to a Southern Democrat Christian, and these state actors verbalized anti-Christian vitriol, bias & hatred at and in the presense [sic] of Marino, and when discussing the victims mother, Jeanette Popp, who they dispised [sic] and hated.

The Air America Radio Network operated by secular progressives not only air their anti-Christian bias/hatred, but also their reverse racism-white guilt, as the progressive commentators use phrases such as "disemboweling the white underbelly," & "middle class white bread America," which phraseology is used with hatred, contempt & derision in regards to moderates, conservatives, & Southern Democrat Christianity, and these & numerous other racial epitaphs were used by white state actors in the presence of Marino during meetings in regards to George Bush & the G.O.P., proving that state actors were partially motivated to harm Marino after his usefulness was at an end, due to reverse racism, anti-Christian sentiment.

(Hab. Pet. Memo. at 10-11) (internal citations and titles omitted).

Although Marino's contentions concerning the alleged conspiracy are not brief, they nonetheless lack specific detail.  Notably, Petitioner makes no indication of how this purported conspiracy interfered in any way with the criminal proceedings against him.  He has not, therefore, shown he is entitled to habeas relief on this basis.  *See United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980) (absence of specific facts in support of conspiracy allegation, and lack of record support suggesting conspiracy existed, renders allegation that government engaged in conspiracy to violate defendant's constitutional right conclusory and, therefore, insufficient to state constitutional claim); *see also Koch*, 907 F.2d at 530 (conclusory allegations on critical issue insufficient to raise  constitutional issue); *Ross*, 694 F.2d at 1012 (mere conclusory allegations do not raise constitutional issue in habeas proceeding).

8

**E. Trial Judge Recusal**

Marino further contends the trial judge, Bob Perkins ("Perkins"), should have been recused. According to Petitioner, he testified during a hearing on his motion to recuse Perkins as to the judge's conduct in a prior trial. Specifically, he asserted that Perkins threatened to have him hung in front of the courthouse as an example, appointed incompetent counsel to represent him, instructed a court bailiff to assault him, and denied his habeas application.

Due process mandates that an impartial judge preside over trial proceedings. *Republican Party of Minn. v. White*, 536 U.S. 765, 775-76, 122 S. Ct. 2528, 2535 (2002); *Johnson v. Miss.*, 403 U.S. 212, 216, 91 S. Ct. 1778, 1780 (1971). Most challenges to a judge's impartiality do not raise a constitutional concern "because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard." *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 1797 (1997). *See also Fed. Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 702, 68 S. Ct. 793, 804 (1948) (most matters relating to judicial disqualification do not rise to constitutional level). "[T]he floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy*, 520 U.S. at 904-05, 117 S. Ct. at 1797 (quotation omitted).

Once again, Petitioner's claims are rendered facially insufficient because he has not supported his allegations by any evidence, testimonial or otherwise. Moreover, the allegations he makes concerning Perkins' bias all rest on actions taken by the judge in the context of a prior judicial proceeding. The Supreme Court has made clear that, under the "extrajudicial source" doctrine, events occurring or opinions expressed in the course of judicial proceedings rarely require recusal. *Liteky v. United States*, 510 U.S. 540, 554-45, 114 S. Ct. 1147, 1152 (1994). Thus, opinions formed by the judge on the basis of facts introduced, or events occurring in the course of the current or prior proceedings, do not constitute a basis for recusal unless they would display a

deep-seated favoritism or antagonism that would make fair judgment impossible. *Liteky*, 510 U.S. at 555, 114 S. Ct. at 1157. *See also Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of State of Miss.*, 637 F.2d 1014, 1020 (5th Cir. 1981) (disqualification not ordinarily predicated on judge's ruling in instant case or in related cases, nor on demonstrated tendency to rule any particular way, nor on particular leaning or attitude derived from experience on bench); *In re Corrugated Container Antitrust Litig.*, 614 F.2d 958, 965 & n.17 (5th Cir. 1980) (familiarity with defendants and facts of case arising from earlier participation in judicial proceedings insufficient to disqualify judge).

Accordingly, even assuming the accuracy of Petitioner's factually unsupported claims, those allegations are insufficient to meet the standard necessary to have required the recusal of Perkins. *See Liteky*, 510 U.S. at 556, 114 S. Ct. at 1157 (judge's ordinary efforts at courtroom administration, even a stern and short-tempered judge's ordinary efforts at courtroom administration, not sufficient to establish bias); *West v. Johnson*, 92 F.3d 1385, 1411 n.47 (5th Cir. 1996) (declining to find alleged comment by trial judge that "the only action this Court would like to be involved in the future with regard to [defendant] would be to see the m**r fried" demonstrated bias because comment was clearly based on matters learned at trial and, though inappropriate, did not reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible"). Accordingly, Petitioner should not be granted relief on this claim.

**F.  Ineffective Assistance of Counsel**

Marino further claims he received ineffective assistance of counsel at trial and on appeal. He alleges both counsel suffered from a conflict of interest, prejudicing his case.

**1.      Applicable Law**

To establish an ineffective assistance of counsel claim, Marino must meet the two-prong test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). He must demonstrate

both that: (1) his counsel's performance was deficient, including "errors so serious that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment"; and (2) his counsel's "deficient performance prejudiced the defense." *Id*. at 687, 104 S. Ct. at 2064; *United States v. Walker*, 68 F.3d 931, 933 (5th Cir. 1995).

To establish deficient performance, Marino must show his counsel's acts were not "reasonable in light of all the circumstances," and he must overcome the "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *See United States v. Haese*, 162 F.3d 359, 364 (5th Cir. 1998) (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064); *United States v. Samuels*, 59 F.3d 526, 529 (5th Cir. 1995) (strong showing required by defendant to place counsel's conduct outside wide range of reasonable professional assistance). To demonstrate prejudice, he must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Haese*, 162 F.3d at 364 (citing *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998)); *United States v. Kinsey*, 917 F.2d 181, 183 (5th Cir. 1990).

Marino must show more than that a different result would have been "possible." *Cockrum v. Johnson*, 119 F.3d 297, 302 (5th Cir. 1997). He must also show the prejudice rendered the proceeding "fundamentally unfair or unreliable." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). When a defendant fails to meet either requirement of the *Strickland* test, his ineffective assistance of counsel claim is defeated. *See Belyeu v. Scott*, 67 F.3d 535, 538 (5th Cir. 1996); *United States v. Gaudet*, 81 F.3d 585, 592 (5th Cir. 1993). The Fifth Circuit "has also made clear that counsel is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Likewise, counsel is not "deficient for failing to press a frivolous point." *Sones v. Hargett*, 61 F.3d 410, 415 (5th Cir. 1995).

2.      Discussion

Petitioner first asserts his trial counsel, Larry Sauer ("Sauer"), was ineffective due to a conflict of interest.  To prevail on a claim based on an alleged conflict of interest, Marino first bears the burden of showing an actual conflict of interest adversely affected Sauer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S. Ct. 1708, 1718 (1980).  Further, he must identify "some plausible defense strategy or tactic [that] might have been pursued but was not, because of the conflict of interest." *Hernandez v. Johnson*, 108 F.3d 554, 560 (5th Cir. 1997)

According to Marino, Sauer stated his "job was to protect both the interests of the state actors and Marino with emphasis on eradicating all incriminating evidence of a collusive scheme by state actors and Marino to discredit George Bush and the G.O.P."  (Hab. Pet. Memo. at 9). Petitioner alleges this conflict resulted in Sauer refusing to file pretrial motions Marino requested, failed to ensure his plea deal was adhered to, coached him to testify at trial that he knew laws existed prohibiting his conduct though in reality he knew no such thing, refused to prepare a defense based on evidence of the sexual assaults suffered by Marino as a child, coerced him into writing threatening letters after his conviction, and lied to appellate counsel regarding pretrial motion argument.

The undersigned finds Marino's allegations fail to satisfy either part of his burden in establishing a conflict of interest.  As set forth above, Petitioner alleges the existence of a collusive scheme involving a variety of state actors.  He has wholly failed to present any evidence of such a scheme, however.  Marino's unsupported allegation of Sauer's intent to support such a scheme is insufficient to demonstrate an actual conflict. *See United States v. Villarreal*, 324 F.3d 319, 327 (5th Cir. 2003) (mere possibility of conflict, absent showing attorney actively represented conflicting interests, not sufficient to prevail on claim of ineffective assistance of counsel).

Nor has Petitioner established the alleged conflict resulted in actual prejudice.  Indeed, he fails even to identify the pretrial motions he believes should have been filed.  Additionally, once again Petitioner has failed to present any evidentiary support for his allegations of a plea deal, the coaching provided by his counsel, the existence of childhood sexual assaults, the existence of letters written post conviction or conversations between Sauer and appellate counsel.  This failure alone dooms this claim.  *See Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir. 2000) (conclusory allegations do not raise constitutional issue in federal habeas proceeding); *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (mere conclusory allegations on critical issue insufficient to raise constitutional issue).

Moreover, in responding to Marino's state application for writ of habeas corpus, Sauer provided an affidavit in which he stated:

> Applicant has alleged that defense counsel failed to pursue credible pretrial issues.  All credible pretrial issues were thoroughly discussed with Applicant and experts when appropriate.  Defense counsel and applicant then made decisions concerning trial strategy.  All issues and defenses were explored and presented, or not, based on trial strategy.

> Applicant has alleged that defense counsel failed to prepare a defense based on evidence that Applicant had been sexually molested as a child.  The issue of Applicant's victimization as a child was discussed with both Applicant and his court-appointed psychiatrist, Dr. Jay Fogelman.  Further, the issue of his victimization as a child was presented at trial as one part of his trial strategy.  However, defense counsel does not recall Applicant ever revealing suffering any sexual abuse as a child, nor has counsel discovered any supporting documentation of sexual abuse.

> Applicant has alleged that defense counsel was aware of and engaged in collusion with "state actors" to his detriment.  Defense Counsel did not collude with any person to the detriment of Applicant, nor is defense counsel aware of any such misconduct.

*Ex parte Marino*, No. 18,783-06 at 78.  In considering Petitioner's application, the state trial court concluded:

> Based on this trial court's experience with Larry Sauer, the court finds that Mr. Sauer is a competent attorney with substantial felony trial experience.

> This court finds that Mr. Sauer is a credible person.

The court finds that Mr. Sauer thoroughly discussed all credible pretrial issues with applicant and with experts, when appropriate.

The court finds that Mr. Sauer discussed trial strategy with applicant and made decisions on the pretrial issues.

The court finds that Mr. Sauer explored all relevant issues and defenses and determined to present certain issues and defenses based on trial strategy.

The court finds that Mr. Sauer was not, and is not, aware of any evidence that applicant was sexually molested as a child.

Applicant fails to present any evidence supporting his claim that he was sexually molested as a child.

The court finds that Mr. Sauer presented evidence of applicant's victimization as a child as part of trial strategy.

The court finds that defense counsel did not engage in collusion with State actors to applicant's detriment, and further finds that defense counsel was not aware of any such misconduct by the prosecution.

*Id.* at 97-98 (paragraph numbers omitted).

In reviewing Marino's claims this Court must defer to the state court's adjudication on questions of law and mixed questions of law and fact, unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). To overcome the deference granted factual findings made by the state court, the petitioner must come forward with contrary "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner here does not even attempt to meet these standards. *See United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (conscious and informed decision on trial tactics and strategy provides basis for constitutionally ineffective assistance of counsel only when so ill chosen as to permeate entire trial with obvious unfairness). Accordingly, this Court is bound by the findings of the state habeas court rejecting Marino's claim as to the ineffectiveness of his trial counsel.

Marino also contends his appellate counsel was ineffective because she suffered from a conflict of interest. He complains she sought appellate relief based on grounds that were

procedurally barred, and ignored his request to litigate the issue of Judge Perkins' bias. Petitioner contends these failures establish counsel's conflict of interest due to her appointment by Judge Perkins. He also claims counsel's delay in filing his appeal "ran down" ten months of the limitations period on any potential criminal liability for the criminal conspiracy of the state actors.

Once again, these claims fail for lack of evidentiary and legal support. The undersigned has already concluded Petitioner has presented no evidence to show his prosecution was the result of a criminal conspiracy by any state actors. Nor has he shown he had a viable claim concerning the bias of Judge Perkins and the lack of success of his attempts to recuse the judge. Accordingly, he has not shown counsel was ineffective for failing to raise these issues on appeal. *See Sones*, 61 F.3d at 415 (counsel's performance not deficient for failing to raise meritless point). Accordingly, Petitioner has not established he received ineffective assistance of either trial or appellate counsel and this claim should be denied.

## G. Insanity

Petitioner next maintains he is actually innocent because he was insane at the time of the offense. A claim of actual innocence, standing alone, is insufficient to merit federal habeas relief. *Herrera v. Collins,* 506 U.S. 390, 400, 113 S. Ct. 853, 860 (1993); *Dowthitt v. Johnson,* 230 F.3d 733, 741 (5th Cir. 2000). There also must be evidence of an independent constitutional violation in the state criminal proceeding. *Dowthitt,* 230 F.3d at 741.

Here, Petitioner has failed to establish an underlying constitutional violation. Nor is there any affirmative evidence of his innocence. Rather, Marino asserts that he was insane at the time of the offense. It is not clear such an assertion is properly considered under the "actual innocence" standard. *See Robison v. Johnson*, 151 F.3d 256, 267 (5th Cir. 1998) (assuming without deciding that proof of insanity deserves same treatment as claim of "actual innocence"). Moreover,

Petitioner has not presented any new evidence concerning his mental condition.  Accordingly, he has not shown he is entitled to relief on the basis of "actual innocence."

Although it is not directly apparent from his pleadings, Marino's claim could also be an attempt to challenge the sufficiency of the evidence underlying the jury's decision.  The issue of Marino's sanity was raised as an affirmative defense at trial.  His mental condition was the subject of both expert testimony and his own testimony at trial.  Petitioner argued on his direct appeal that the jury's failure to find him insane was against the great weight of the evidence.  In reviewing this claim the appellate court summarized Marino's testimony thusly:

> Appellant testified that his family has a history of mental illness. He began seeing spirits or demons as a child. According to appellant, these spirits instructed him in their "belief systems." By the time he was twelve, appellant was engaging in such disruptive behavior that he was placed in a private psychiatric hospital in Austin. Following his release from the hospital four years later, appellant lived in a series of shelters and also spent time in the Austin State Hospital. Appellant said that he abused drugs and alcohol in an effort to control the spirits. He went to prison for the first time in 1982, at the age of twenty-three, after a theft conviction. Ten days after he was paroled for that offense, he committed an armed robbery and returned to prison. Appellant testified that in the summer of 1988, the spirits were urging him to kill a blond, white woman. In July, he sexually assaulted a woman but did not kill her because she was neither white nor blond.

> Appellant described the murder at the pizza restaurant as a "human sacrifice" and a "ritual"-in his words, "certain things ... had to be said and done and ... they were done." Appellant was asked during cross-examination if, at the time of the murder, he knew the difference between right and wrong. He answered:

> I did know-beyond a reasonable doubt, I knew that general knowledge thou shalt not murder, which is defined as the killing of an innocent person in an unjust manner.

> I also knew in this country, as well as Europe, that murder was illegal. It's the same definition, but the point of inquiry here is not what I knew, but what I believed. What I mean by that is what I believed is that I had the right to kill.

> Appellant acknowledged that what he did was legally wrong, but asserted that it was not wrong from his "faith standard" at that time. Appellant testified that in 1995, while in prison for another offense, he experienced a religious conversion. Three months later, he wrote his first letter to the authorities admitting his guilt of the murder.

*Marino*, 2004 WL 1468822 at *1.  The defense also presented the testimony of Dr. Jay Fogelman ("Fogelman"), a psychiatrist who examined Marino and his extensive psychiatric record.  Fogelman testified Petitioner suffers from psychotic disorder with delusions, but specifically stated his opinion was that Marino was sane at the time of the offense.  (Trial Tr. 5 at 83-100).  In rebuttal, a second psychiatrist, Dr. Mary Anderson ("Anderson"), also testified.  Anderson agreed with Fogelman that Marino was delusional.  She also agreed Petitioner was sane at the time of the offense and knew his behavior was wrong.  (*Id*. at 111-15).

In rejecting Petitioner's challenge to the jury's denial of his insanity defense, the appellate court held:

> We have no doubt that appellant was, and is, psychotic and delusional. But even if appellant truly believed that he had "a right to kill" under his own personal "faith standard," his testimony reveals that he fully appreciated that his conduct was both unlawful and morally wrong under society's standards. Having reviewed all the evidence, we conclude that the jury's failure to find that appellant did not know that his conduct was wrong was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

*Marino*, 2004 WL 1468822 at *2.

A federal court may not disturb a conviction in a state criminal proceeding unless no rational trier of fact could have found the elements of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991).[2]  In light of the expert testimony presented at trial, Petitioner here has failed to meet that standard.  This Court must accept the state appellate court's finding unless it "was based on an unreasonable determination of the facts in light of the evidence presented."  *Hill*, 210 F.3d at 485.

---

[2] As another court in this state has noted, if does not appear the Supreme Court has addressed a "sufficiency of the evidence" claim with respect to an affirmative defense in the context of a criminal penalty.  *See Naasz v. Dretke*, 2003 WL 22329017, at *3 (N.D. Tex. Oct. 6, 2003) (addressing habeas claim based on argument that jury's finding rejecting sudden passion defense to murder was against great weight and preponderance of evidence).  The Fifth Circuit has, however, applied a standard similar to the *Jackson* standard in considering the affirmative defense of insanity on direct appeal.  *See United States  v. Abou-Kassem*, 78 F.3d 161, 166 (5th Cir. 1996) (holding jury's finding may be rejected "only if no reasonable trier of fact could have failed to find that defendant's criminal insanity at the time of the offense was established by clear and convincing evidence").  The undersigned thus applies the *Jackson* standard in an abundance of caution.

Marino has failed to make such a showing and he is thus not entitled to relief under the AEDPA standard of review on this basis.

## H.  Equal Protection

In a related claim, Petitioner next contends the differential treatment afforded by the Texas criminal justice system to mentally ill juveniles and mentally ill adults deprived him of equal protection.  Under Texas law, an adult is absolved of criminal responsibility only if, as a result of severe mental disease or defect, he did not know his conduct was wrong.  TEX. PEN. CODE ANN. § 8.01(a) (Vernon Supp. 2002).  A juvenile is not criminally responsible if, as a result of mental illness or retardation, he "lacks substantial capacity either to appreciate the wrongfulness of [his] conduct or to conform [his] conduct to the requirements of law."  TEX. FAM. CODE ANN. § 55.51(a) (Vernon 2002).  According to Marino, these differential standards constitute unequal treatment based on age in violation of his right to equal protection.

Respondent argues this claim for relief is procedurally barred from review by this Court. A federal court may not consider the merits of a habeas claim if a state court has denied relief due to a procedural default.  *Sawyer v. Whitley*, 505 U.S. 333, 338, 112 S. Ct. 2514, 2518 (1992).  Only procedural rules that are firmly established and regularly followed by state courts can prevent habeas review of federal constitutional rights.  *Hathorn v. Lovorn*, 457 U.S. 255, 262-63, 102 S. Ct. 2421, 2426 (1982).  Under Texas law, a party must make a timely and proper objection to preserve a claim for appellate review.  *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991). The objection must state "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."  TEX. R. APP. P. 33.1(a)(1)(A).  This "contemporaneous objection" rule constitutes an adequate state procedural bar for purposes of federal habeas review.

*Turner v. Quarterman*, 481 F.3d 292, __ (5th Cir. 2007); *Dowthitt v. Johnson*, 230 F.3d 733, 752 (5th Cir. 2000); *Muniz v. Johnson*, 132 F.3d 214, 221 (5th Cir. 1998).

Petitioner raised this argument for the first time in his direct appeal. The appellate court found his failure to raise the issue at trial was a failure to preserve the issue for appeal. *Marino*, 2004 WL 1468822 at *3. Petitioner is therefore barred from litigating this claim in federal court. *See Parr v. Quarterman*, 472 F.3d 245, 253 (5th Cir. 2006) (federal court precluded from granting habeas relief where last state court to consider claim based denial of relief on independent and adequate state-law procedural ground).

**I. Jail Time Credits**

Marino also contends he was denied proper credit for his jail time. Specifically, he maintains he is entitled to credit on his sentence for the time beginning with the commencement of the official investigation in 1996 through conviction.

Generally, in the absence of a statute to the contrary, "there is no federal constitutional right to credit for time served prior to sentence." *Gremillion v. Henderson*, 425 F.2d 1293, 1294 (5th Cir. 1970). *See also Jackson v. Alabama*, 530 F.2d 1231, 1238 (5th Cir. 1976) (absent denial of bail due to indigence, "pre-sentence credit is not an absolute constitutional right"). In denying relief on this claim the state habeas court found:

> Applicant was initially indicted in this case on June 14, 2001.
>
> At the time the indictment in this case was returned, applicant was imprisoned for life for convictions in case numbers 103,256, 103,272, 103,257, and 103,273 for aggravated robbery, aggravated robbery, aggravated robbery, and aggravated sexual assault, respectively.
>
> The trial judge granted applicant 422 days jail time credit.
>
> Applicant is not entitled to 63 months jail time credit while police investigated his capital murder offense.
>
> Applicant fails to sustain his burden of showing that he is entitled to any additional time credit.

*Ex parte Marino*, No. 18,783-06 at 99 (paragraph numbers omitted).  Petitioner has not provided any legal authority either contrary to the state habeas court's findings or otherwise supporting his entitlement to the jail time credits he seeks.  In reviewing such claims, a federal habeas court must defer to the state courts' interpretation of the applicable Texas law.  *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).  Accordingly, Marino has failed to show he is entitled to federal habeas relief on this basis.

**J.  Stacking of Sentence**

Petitioner next maintains his current sentence was improperly stacked on his prior sentences.  He contends Judge Perkins acted out of improper motive in ordering his sentences to run consecutively.

As noted above, Marino has failed to provide any evidence of an improper or collusive motive underlying the criminal proceedings against him.  Nor has he identified any legal authority supporting his contention that it was legally improper for Judge Perkins to order his sentences for unrelated offense to be served consecutively.  Most significantly, Petitioner has failed to identify any federal constitutional right injured by Judge Perkins' order.   As this claim raises only state law issues, this Court is bound by the state court's determination.  *See Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996) (claim that trial judge did not have authority to cumulate sentences fails because it concerns state criminal procedure and "does not involve such a denial of fundamental fairness as to fall within the purview of federal habeas corpus").  *See also Weeks*, 55 F.3d at 1063 (federal habeas court must defer to state courts' interpretation of applicable state law); *Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir. 1986) (federal courts will not review state court's interpretation of its own law in federal habeas corpus proceeding).

### K.  Prison Official Conspiracy

Petitioner further claims Texas prison officials have conspired with private prison officials to keep prisons full for financial reasons.  Not surprisingly, he presents no evidentiary support for this contention.  Moreover, this claim is not of the sort which is legally cognizable in a federal habeas corpus action.  Federal habeas corpus proceedings are limited to reviewing the fact or duration of an inmate's confinement.  *See Preiser v. Rodriguez*, 411 U.S. 475, 499, 93 S. Ct. 1827, 1841 (1973) (challenge under 42 U.S.C. § 1983 is proper remedy for state prisoner making constitutional challenge to conditions of his prison life, but not to fact or length of his custody); *Cook v. Tex. Dep't of Criminal Justice Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994) (habeas corpus is solely available to challenge the "fact or duration of confinement").  *See also Kutzner v. Montgomery County*, 303 F.3d 339, 341 (5th Cir. 2002) (noting Supreme Court has consistently held habeas corpus is exclusive means for prisoners to attack fact or duration of confinement).  Petitioner's attack on the motivation of prison officials to keep Texas prisons full does not fall within those bounds.  He is not, therefore, entitled to relief in this proceeding on this basis.

### L.  Law Library Access

Marino finally alleges he was denied adequate access to a law library to prepare his post-conviction applications.  Again, this is not a claim which attacks the fact or duration of Petitioner's confinement, but rather the conditions of his confinement.  Accordingly, Petitioner has not shown he is entitled to federal habeas relief on this claim.

### VI.  RECOMMENDATION

The Magistrate Court recommends that the District Court **DENY** Petitioner's Application for Habeas Corpus under 28 U.S.C. § 2254.

## VII.  WARNING

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 30th day of April, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE